SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**G.C. v. Division of Medical Assistance and Health Services (A-35/36/37-20) (084417)**

**Argued September 14, 2021 -- Decided November 18, 2021**

**LaVECCHIA, J., writing for a unanimous Court.**

The issue in this consolidated appeal is whether N.J.A.C. 10:72-4.4(d)(1), which implements New Jersey's 1987 expansion of its Medicaid program, is inconsistent with the language and intent of the enabling state and federal legislative amendments that authorized the expansion, N.J.S.A. 30:4D-3(i)(11) and 42 U.S.C. § 1396a.

The program known as Medicaid is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services. The Federal Government shares the costs of Medicaid with states that elect to participate in the program, and in return, participating states comply with requirements imposed by the federal statutes and regulations that govern the program.

The parameters that a "State plan for medical assistance must" follow are set forth in 42 U.S.C. § 1396a, which was amended in 1986 to expand coverage options. Within an assistance plan, participating states are required to provide coverage to certain groups and can choose to provide coverage to other groups. The line between mandatory and optional coverage is primarily drawn in § 1396a(a): mandatory coverage is specified in § 1396a(a)(10)(A)(i), and the state options are set forth in subsection (ii).

Within the mandatory category, subsection (a)(10)(A)(i) includes, among other groups, people who receive certain types of benefits such as Supplemental Security Income (SSI). Within the optional category, subsection (a)(10)(A)(ii)(I) includes people who are not receiving aid as described in the previous subsection but who nevertheless "meet the income and resources requirements" for such aid or for "the supplemental security income program." The optional category also includes, in subsection (a)(10)(A)(ii)(X), people not receiving the type of aid described in (a)(10)(A)(i) who are sixty-five years of age or older, or disabled, and whose income level does not exceed a specified percentage (decided by the state) of the federal poverty line (FPL) as applicable to a family of the size involved. People eligible for benefits under that second optional category are known as "ABD beneficiaries."

1

Subsection (a)(10)(A)(ii)(X)'s requirements reference 42 U.S.C. § 1396a(m)(1) to (2). Particularly central to these appeals is subsection (m)(2)(A), which specifies that "[t]he income level established under paragraph (1)(B) may not exceed a percentage (not more than 100 percent) of the official poverty line (as defined by the Office of Management and Budget . . .) applicable to a family of the size involved." (emphasis added). Thus, while people in the optional category identified in 42 U.S.C. § 1396a(a)(10)(A)(ii)(I) must be eligible for, but not actually receive, SSI to qualify for Medicaid benefits, the Medicaid eligibility of those in the optional category identified in (a)(10)(A)(ii)(X) is not dependent on eligibility for SSI, but rather is determined based on a comparison of the group member's income against whatever percentage of the FPL "applicable to a family of the size involved" a given state chooses for its ABD program.

New Jersey is a long-time participant in the Medicaid program and has chosen to provide coverage to the optional groups identified in § 1396a(a)(10)(A)(ii). New Jersey's definitions of a "qualified applicant" in N.J.S.A. 30:4D-3(i)(2), (7), and (11) track groups of qualified individuals under the federal Medicaid statute. The definition in 30:4D-3(i)(2) tracks the example of the mandatory group described in 42 U.S.C. § 1396a(a)(10)(A)(i)(I), i.e., recipients of SSI. The definition in 30:4D-3(i)(7) tracks the optional group comprised of people who are eligible for SSI but not recipients of it. See 42 U.S.C. § 1396a(a)(10)(A)(ii)(I). And, importantly, the definition in 30:4D-3(i)(11) tracks the ABD beneficiary group. See id. at (a)(10)(A)(ii)(X), (m)(1). The legislative history makes crystal clear that N.J.S.A. 30:4D-3(i)(11) was enacted to provide coverage for the new group established by federal law in 1986 through the enactment of 42 U.S.C. § 1396a(a)(10)(A)(ii)(X) and 1396a(m).

The Division of Medical Assistance and Health Services (DMAHS) has promulgated regulations for administering Medicaid benefits, including Chapter 72 of Title 10 of the Administrative Code, which applies to the ABD program. The applicants here challenge N.J.A.C. 10:72-4.4(d)(1), which explains how to determine eligibility for the ABD program based on income as follows: "If the countable income (before income deeming) of the aged, blind, or disabled individual exceeds the poverty income guideline for one person he or she is ineligible for benefits and income deeming does not apply." (emphasis added).

Both applicants in these matters, E.M. and G.C., were denied ABD benefits under N.J.A.C. 10:72-4.4(d)(1) because DMAHS determined that their individual incomes -- unadjusted for household size -- placed them just above the limit. E.M. lives with his wife, who is partially blind, has diabetes, and has no income. E.M.'s income of $1,193 exceeded the allowable standard of $1,005 under the FPL for individual applicants, and E.M. was denied benefits. G.C. lives with her husband, who has no income, and her two minor children, who each receive about $280 in monthly Social Security benefits as dependents of a disabled parent. G.C.'s application was denied because her income of $1,141 exceeded the allowable standard of $1,005 for individual applicants.

2

The administrative law judge (ALJ) who presided over E.M.'s challenge to the agency's denial of his application recommended reversal, finding that N.J.A.C. 10:72-4.4(d)(1) conflicts with federal law. DMAHS rejected the ALJ's decision. As for G.C., the ALJ who heard the matter concluded she was ineligible for ABD benefits under the regulation, and DMAHS adopted that decision. Both applicants appealed from DMAHS's final decisions, arguing that N.J.A.C. 10:72-4.4(d)(1) conflicts with both 42 U.S.C. § 1396a(m) and N.J.S.A. 30:4D-3(i)(11).

The Appellate Division reversed and remanded the matters for further action. 463 N.J. Super. 79, 95 (App. Div. 2020). The Appellate Division determined that N.J.A.C. 10:72-4.4(d)(1) does not violate the federal Medicaid statute. Id. at 89-92. However, the Appellate Division found the regulation inconsistent with state law. Id. at 92-95.

The Court granted DMAHS's petition for certification seeking review of whether N.J.A.C. 10:72-4.4(d)(1) conflicts with N.J.S.A. 30:4D-3(i)(11). 245 N.J. 75 (2021). The Court also granted the cross-petitions filed by G.C. and E.M., who maintain that the regulation conflicts with federal law. 245 N.J. 53 (2021); 245 N.J. 54 (2021).

**HELD:** The Court affirms the Appellate Division's invalidation of N.J.A.C. 10:72-4.4(d)(1) as inconsistent with its state enabling legislation and contrary to legislative intent. But the Court has grave concerns that the regulation's method of operation is also inconsistent with the federal Medicaid law. The Court accordingly vacates that portion of the Appellate Division's analysis that rejected the federal-law argument by cross-petitioners.

1. Comparing a plain language construction of N.J.S.A. 30:4D-3(i)(11) to N.J.A.C. 10:72-4.4(d)(1), the Court finds the regulation, on its face, to be in patent conflict with the statute. N.J.S.A. 30:4D-3(i)(11) explicitly makes medical assistance available to those who are disabled or over the age of 65 and "whose income does not exceed 100% of the poverty level, adjusted for family size." The regulation, in contrast, explicitly requires an individual's countable income to be compared against the "poverty income guideline for one person." N.J.A.C. 10:72-4.4(d)(1) thus alters the language of the legislation and frustrates the plain import of the legislative direction to adjust the poverty level to family size when determining eligibility. The regulation's label -- as "income-deeming methodology" -- does not affect the analysis. Each part of the regulatory scheme must flow from the statute that enables it; DMAHS cannot selectively follow the enabling statute. Moreover, the challenged portion of N.J.A.C. 10:72-4.4 is triggered regardless of whether income is deemed, which suggests that the initial eligibility determination is not even rationally related to, let alone a necessary component of, the income-deeming methodology. And the legislative history of N.J.S.A. 30:4D-3(i)(11) further supports that the FPL was to be adjusted for family size when determining an applicant's eligibility. N.J.A.C. 10:72-4.4(d)(1) may not, consistent with the state statutory language, find an applicant ineligible without making the proper adjustment for family size. (pp. 30-33)

3

2. Reliance on the fact that eligible candidates under 42 U.S.C. § 1396a(m)(1)(A) must have their income determined under SSI income methodology conflates two different concepts: determining income and determining eligibility. The Medicaid Act does not support such a conflation. Although 42 U.S.C. § 1396a(m)(1)(B) requires income to be determined based on SSI methodology, the statutory provision also makes clear that Medicaid eligibility is determined by comparing the calculated income to a state's chosen percentage of the FPL adjusted for family size. In other words, while subsection (m)(1)(B) borrows the SSI income calculation methodology, it provides its own distinct test for determining eligibility. In explaining why that is so, the Court underscores three points: (1) the reference in 42 U.S.C. § 1396a(m)(1)(B) to section 1382a (which defines "income") -- but not to section 1382 (which is entitled, "Eligibility for benefits"); (2) the fact that Medicaid eligibility is tied to SSI eligibility in 42 U.S.C. § 1396a(a)(10)(A)(i)(I) and (ii)(I), but not in (a)(10)(A)(ii)(X); and (3) the fact that N.J.A.C. 10:72-4.4 does not actually track the SSI methodology, that DMAHS claims compels its initial eligibility determination. The Court also stresses that, on a practical level, the Regulation can lead to an absurd outcome: an individual with $900 in countable individual income (below the $1,005 FPL amount for a single individual) whose spouse has $293 in countable income would have the same total income as E.M. and his wife (who has no income) -- $1,193 -- but would be eligible for Medicaid under the regulation because that individual's income would be able to vault the first step of N.J.A.C. 10:72-4.4(d). (pp. 33-38)

3. The Appellate Division rejected the applicants' argument that N.J.A.C. 10:72-4.4(d)(1) is inconsistent with federal law, reasoning that the FPL for a single person will necessarily be lower than the FPL adjusted for the size of the applicant's family. But the federal Medicaid Act is clear for this specific program: states may choose a percentage, "not more than 100 percent," of the FPL "applicable to a family of the size involved," by which to compare an applicant's income to determine Medicaid eligibility. N.J.A.C. 10:72-4.4(d)(1) does not do that. Rather, it indiscriminately compares any applicant's income, regardless of his or her family size, against the FPL for one person. Although that benchmark may necessarily amount to a percentage less than 100% of the appropriate FPL, that result is reached under a procedure that ignores Congress's chosen approach. Congress would not have chosen the language requiring adjustment for family size if it did not care that states did exactly the opposite. Because the Court has invalidated N.J.A.C. 10:72-4.4(d)(1) on state law grounds, it does not reach this question of federal law; however, the Court vacates the contrary conclusion that the Appellate Division included as part of its holding. (pp. 38-41)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.**

4

G.C.,

Petitioner-Respondent/Cross-Appellant,

v.

Division of Medical Assistance
and Health Services,

Respondent-Appellant/Cross-Respondent,

and

Ocean County Board of
Social Services,

Respondent.

_____

E.M.,

Petitioner-Respondent/Cross-Appellant,

v.

Division of Medical Assistance
and Health Services,

Respondent-Appellant/Cross-Respondent,

and

Essex County Board of
Social Services,

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
463 N.J. Super. 79 (App. Div. 2020).

| Argued | Decided |
|---|---|
| September 14, 2021 | November 18, 2021 |

Stephen Slocum, Deputy Attorney General, argued the
cause for appellant/cross-respondent (Andrew J. Bruck,
Acting Attorney General, attorney; Melissa H. Raksa,
Assistant Attorney General, of counsel, and Francis X.
Baker, Deputy Attorney General, on the briefs).

Joshua M. Spielberg argued the cause for
respondent/cross-appellant E.M. (Legal Services of New
Jersey, attorneys; Joshua M. Spielberg, Melville D.
Miller, Jr., Kristine Marietti Byrnes, Maura Sanders, and
Dawn K. Miller, on the briefs).

Kenneth M. Goldman argued the cause for
respondent/cross-appellant G.C. (South Jersey Legal
Services, attorneys; Kenneth M. Goldman, and Thomas
LaMaina, on the briefs).

Timothy P. Malone argued the cause for amici curiae
Community Health Law Project and Disability Rights
New Jersey (Pashman Stein Walder Hayden, attorneys;
Timothy P. Malone, on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Medicaid is a shared federal-state program that provides a lifeline of

medical services to eligible individuals.  New Jersey participates in the

Medicaid program by virtue of its adoption of the New Jersey Medical Assistance and Health Services Act (the New Jersey Act), N.J.S.A. 30:4D-1 to -19.5.

Pertinent to this appeal, New Jersey amended the New Jersey Act in 1987 to expand coverage, creating a new category of eligible persons under the state's optional categorically needy program.  L. 1987, c. 349 (codified at N.J.S.A. 30:4D-3(i)(11)).  Federal law had been altered to permit states to extend Medicaid coverage to previously ineligible persons who are aged, blind, or disabled and who do not receive Social Security public assistance benefits but whose lack of means renders them unable to afford certain medical expenses not covered through Medicare.  Specifically, the amendment to the federal Medicaid law gave states the option to extend Medicaid coverage to certain individuals who are aged, blind, or disabled and whose income is not greater than 100% of the federal poverty guidelines "applicable to a family of the size involved."  42 U.S.C. § 1396a(a)(10)(A)(ii)(X), (m)(1) to (2).[1]  The law allows participating states discretion to choose the percentage of the federal poverty guideline up to which coverage will be available.  Id. at

---

[1]  The amendments were added through Title XIX as part of the Omnibus Budget Reconciliation Act of 1986, P.L. 99-509, § 9402.  Section 9402 in Public Law 99-509 is entitled "Optional Coverage of Elderly and Disabled Poor for all Medical Benefits," and subsection (a) of section 9402 is titled "Creation of New Optional Categorically Needy Groups."

(m)(1)(B), (m)(2)(A).  New Jersey has chosen to use the maximum, 100% limit of the federal poverty guideline.  See N.J.S.A. 30:4D-3(i)(11) (defining as qualified an applicant age 65 or older, or who is blind or disabled, "whose income does not exceed 100% of the poverty level, adjusted for family size").

The issue in this consolidated appeal is whether one of the State's regulations that implements this particular expansion of New Jersey's Medicaid Program is inconsistent with the language and intent of the enabling state and federal legislative amendments that authorized the expansion.  The challenge focuses on N.J.A.C. 10:72-4.4(d)(1) (the Regulation).  This challenge arose when two applicants, one who resided with his spouse and one who resided with her husband and two children, filed for benefits under this Medicaid program, known as the NJ Medicaid -- Aged, Blind, and Disabled Program (ABD program).

The Division of Medical Assistance and Health Services (DMAHS) dismissed the claims of the two applicants.  Each was denied coverage on the basis that the applicant's income -- as an individual and irrespective of his or her family size -- exceeded the maximum income permitted under the federal poverty guideline for a single individual because N.J.A.C. 10:72-4.4(d)(1) provides in relevant part that, "[i]f the countable income . . . of the aged, blind,

4

or disabled individual exceeds the poverty income guideline <u>for one person</u> he or she is ineligible for benefits." (emphasis added).

New Jersey's regulatory calculation does not adjust the individual's income based on family size when comparing that income to the federal poverty guideline. Rather, the Regulation compares the applicant's individual income against the federal poverty guideline at the 100% limit for an individual. If the applicant's income exceeds that limit by even one dollar, the analysis stops there. He or she is excluded from the ABD program at that first step. There is no adjustment for family size.

In a consolidated opinion, the Appellate Division reversed DMAHS's determination in each of the cases before us, concluding that the Regulation violated the state statutory law enabling the ABD program. That said, the appellate court was unpersuaded by the applicants' arguments that the Regulation was also invalid under federal Medicaid law.

We granted DMAHS's petition for certification seeking our review of whether N.J.A.C. 10:72-4.4(d)(1) conflicts with N.J.S.A. 30:4D-3(i)(11). 245 N.J. 75 (2021). We also granted the cross-petitions filed by the individual claimants, G.C. and E.M., who maintain that the Regulation conflicts with federal law. 245 N.J. 53 (2021); 245 N.J. 54 (2021). And we granted amicus

5

status to Community Health Law Project and Disability Rights New Jersey, who participated jointly.

We now affirm and modify the Appellate Division judgment holding invalid the challenged Regulation. We agree that the Regulation is contrary to the plain language and evident legislative intent of the state law amendment that authorized this Medicaid extension for New Jersey's Medicaid State Plan. We modify because, although we need not reach the question, we have grave concerns that the Regulation's method of operation is also inconsistent with the federal Medicaid law that enabled this expansion of Medicaid eligibility. Accordingly, for the reasons expressed, we vacate that portion of the Appellate Division's analysis that rejected the federal-law argument by cross-petitioners.

I.

For necessary context, we begin by reviewing the structure and key provisions of the federal and state law governing Medicaid.

A. Federal Legislation

With respect to the intent and structure of the shared program known as Medicaid, it is well recognized that "Medicaid, enacted in 1965 as Title XIX of the Social Security Act, [42 U.S.C. §§ 1396 to 1396w-6], is designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of necessary care and services." Atkins v.

6

Rivera, 477 U.S. 154, 156 (1986). "The Federal Government shares the costs of Medicaid with States that elect to participate in the program," and "[i]n return, participating States are to comply with requirements imposed by the Act and by the Secretary of Health and Human Services." Id. at 156-57 (citing 42 U.S.C. § 1396a).

The basic operational principles are as follows. The federal administration of Medicaid authorizes annual appropriations of money for payments to states whose plans for medical assistance have been approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396-1. The parameters that a "State plan for medical assistance must" follow are set forth in 42 U.S.C. § 1396a. Within such a plan, participating states are required to provide coverage to certain groups and can choose to provide coverage to other groups. As the Second Circuit has succinctly explained, "[t]he line between mandatory and optional coverage is primarily drawn in § 1396a(a): mandatory coverage is specified in § 1396a(a)(10)(A)(i), and the state options are set forth in subsection (ii)." Skandalis v. Rowe, 14 F.3d 173, 175-76 (2d Cir. 1994).

Within the mandatory category, which has been referred to as the "categorically needy," see L.M. v. Div. of Med. Assistance & Health Servs., 140 N.J. 480, 485 (1995), subsection (a)(10)(A)(i)(I) includes, among other

7

groups, "all individuals . . . who are receiving aid or assistance under any plan of the State approved under [Title] I ['Grants to States for Old-Age Assistance for the Aged'], X ['Grants to the States for Aid to the Blind'], XIV ['Grants to States for Aid to the Permanently Disabled'], or XVI ['Supplemental Security Income for the Aged, Blind, and Disabled']" of the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A)(i)(I).

Within the optional category, referred to as the "optional categorically needy," see L.M., 140 N.J. at 485, subsection (a)(10)(A)(ii) includes

> any group of individuals described in [42 U.S.C.
> § 1396d(a)[2]] . . . who are not individuals described in
> clause (i) of this subparagraph but --
>
> > (I) who meet the income and resources
> > requirements of the appropriate State plan

---

[2] 42 U.S.C. § 1396d(a) states that

> "medical assistance" means payment of part or all of
> the costs [of various] care and services or the care and
> services themselves, or both . . . to individuals . . . not
> receiving aid or assistance under any plan of the State
> approved under title I, X, or XVI . . . and with respect
> to whom supplemental security income benefits are not
> being paid under title XVI, who are
>
> . . . .
>
> (v) 18 years of age or older and permanently and totally
> disabled . . .
>
> [(emphasis added).]

described in clause (i) or the supplemental security income program . . . , [or]

. . . .

(X) <u>who are described in subsection (m)(1)</u> . . . .

[42 U.S.C. § 1396a(a)(10)(A)(ii)(I), (X) (emphasis added).]

Subsection (a)(10)(A)(ii)(X) references subsection (m)(1), which is also found in 42 U.S.C. § 1396a. Due to the importance of subsubsection (m), we quote its relevant provisions in full:

(m) Description of individuals.

(1) Individuals described in this paragraph are individuals --

(A) who are 65 years of age or older or are disabled individuals (as determined under [42 U.S.C. § 1382c(a)(3)]),

(B) whose income (as determined under [42 U.S.C. § 1382a] for purposes of the supplemental security income program, except as provided in paragraph (2)(C)) does not exceed an income level established by the State consistent with paragraph (2)(A), and

(C) whose resources (as determined under [42 U.S.C. § 1382b] for purposes of the supplemental security income program) do not exceed (except as provided in paragraph (2)(B)) the maximum amount of resources that an individual may have and obtain benefits under that program.

9

(2)

(A) The income level established under paragraph (1)(B) may not exceed a percentage (not more than 100 percent) of the official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with [42 U.S.C. § 9902(2)[3]]) applicable to a family of the size involved.

(B) In the case of a State that provides medical assistance to individuals not described in subsection (a)(10)(A) and at the State's option, the State may use under paragraph (1)(C) such resource level (which is higher than the level described in that paragraph) as may be applicable with respect to individuals described in paragraph (1)(A) who are not described in subsection (a)(10)(A).

(C) The provisions of [42 U.S.C. § 1396d(p)(2)(D)] shall apply to determinations of income under this subsection in the same manner as they apply to determinations of income under [42 U.S.C. § 1396d(p)].

[42 U.S.C. § 1396a(m)(1) to (2).]

Summarizing the structure detailed so far, in order to have an acceptable state Medicaid plan, a state must provide "medical assistance" to "the

---

[3] "The term 'poverty line' means the official poverty line defined by the Office of Management and Budget based on the most recent data available from the Bureau of the Census.  The Secretary shall revise annually (or at any shorter interval the Secretary deems feasible and desirable) the poverty line . . . ."  42 U.S.C. § 9902(2).

categorically needy," a group that includes people who receive certain types of benefits such as Supplemental Security Income (SSI). See id. at (a)(10)(A)(i)(I). States also have the option of providing "medical assistance" to "the optional categorically needy." Id. at (a)(10)(A)(ii).

The "optional categorically needy" group may include people who are not receiving the type of aid described in (a)(10)(A)(i), which includes SSI, 42 U.S.C. § 1396d(a), but who nevertheless "meet the income and resources requirements" of an appropriate State plan for such aid or for "the supplemental security income program," 42 U.S.C. § 1396a(a)(10)(A)(ii)(I). That category also includes people not receiving the type of aid described in (a)(10)(A)(i), id. § 1396d(a), and who are sixty-five years of age or older or disabled, id. § 1396a(a)(10)(A)(ii)(X), (m)(1)(A), and whose income level does not exceed, id. at (m)(1)(B), a specified percentage (decided by the State) of the federal poverty line (FPL) as applicable to a family of the size involved, id. at (m)(2)(A). Although a mouthful, that is the group described by subsection (m)(1), or as used herein -- the ABD beneficiaries.[4]

---

[4]  Although there are other groups of people who fall under either the categorically or optional categorically needy classifications, we focus on the group directly at issue in this appeal, ABD beneficiaries, and the two other previously mentioned examples for context.

11

Furthermore, it is notable that, as to the two "optional categorically needy" groups described above, the first group must be eligible for, but not actually receive, aid such as SSI, while the ABD group's eligibility is not dependent on eligibility for SSI, but rather is determined based on a comparison of the group member's income against the FPL. That said, under (m)(1)(B), income for that latter group is calculated under the same standard for calculating income for SSI purposes.

Turning to subsection (m)(1)(B), it cross-references 42 U.S.C. § 1382a as the appropriate statute for determining the income of a potential ABD beneficiary. Section 1382a defines "earned" and "unearned" income, both of which are counted as income, 42 U.S.C. § 1382a(a)(1) to (2), and describes various exclusions to an individual's calculated income.[5] The statutory provision does not otherwise address eligibility; rather, it explains what is and is not counted as "income." Under subsections (m)(1)(B) and (m)(2)(A), it is that calculated "income" that is compared against whatever percentage of the FPL, "applicable to a family of the size involved," a given state chooses for its ABD program.

---

[5] The Social Security Administration (SSA) has promulgated extensive regulations regarding SSI eligibility and income calculation, which include a process of deeming income to an applicant. See 20 C.F.R. § 416.1160. The "income" regulations, codified at 20 C.F.R, Chapter III, Part 416, Subpart K, list, among other statutory provisions, § 1382a as a statutory authority.

12

B.  State Law

New Jersey is a long-time participant in the Medicaid program.  L.M.,

140 N.J. at 485 (noting that New Jersey made that election with enactment of

the New Jersey Act and that DMAHS is the agency designated to administer

the state's Medicaid program).  Further, "New Jersey has chosen to provide

coverage to 'optional categorically' needy persons."  Id. at 486 (citing N.J.S.A.

30:4D-3(i)(7)).  Relevant to this appeal, the New Jersey Act defines a

"qualified applicant" for Medicaid as

> a person who is a resident of this State, and either a
> citizen of the United States or an eligible alien, and is
> determined to need medical care and services as
> provided under L. 1968, c. 413, with respect to whom
> the period for which eligibility to be a recipient is
> determined shall be the maximum period permitted
> under federal law, and who:
>
> . . . .
>
>> (2) Is a recipient of Supplemental Security
>> Income for the Aged, Blind and Disabled under
>> Title XVI of the Social Security Act;
>>
>> . . . .
>>
>> (7) Would be eligible for the Supplemental
>> Security Income program, but is not receiving
>> such assistance and applies for medical
>> assistance only; [or]
>>
>> . . . .

13

(11) Is an individual 65 years of age and older, or an individual who is blind or disabled pursuant to section 301 of Pub. L. 92-603 (42 U.S.C. § 1382c), whose income does not exceed 100% of the poverty level, adjusted for family size, and whose resources do not exceed 100% of the resource standard used to determine medically needy eligibility pursuant to paragraph (8) of this subsection[.]

[N.J.S.A. 30:4D-3(i)(2), (7), (11).]

Those three definitions of a "qualified applicant" track the groups of qualified individuals under the federal Medicaid statute. The definition in 30:4D-3(i)(2) tracks the example of the "categorically needy" group described in 42 U.S.C. § 1396a(a)(10)(A)(i)(I), i.e., recipients of SSI. The definition in 30:4D-3(i)(7) tracks the group of "optional categorically needy" people who are eligible for SSI but not recipients of it. See 42 U.S.C. § 1396a(a)(10)(A)(ii)(I). And, importantly, the definition in 30:4D-3(i)(11) tracks the ABD beneficiary group. See id. at (a)(10)(A)(ii)(X), (m)(1).

To put a fine point on it, the legislative history of N.J.S.A. 30:4D-3(i)(11) makes crystal clear that the provision was added to the New Jersey Act specifically to provide coverage for the new optional categorically needy group added under federal law through the Omnibus Budget Reconciliation Act of 1986, the law that amended Title XIX to include both subsection

14

(a)(10)(A)(ii)(X) and subsection (m).  See S. Inst., Health, & Welfare Comm. Statement to S. 2972 (Feb. 26, 1987).

Pursuant to N.J.S.A. 30:4D-4 and -7, DMAHS is the administrative agency responsible for Medicaid implementation.  And DMAHS has, in turn, promulgated regulations for administering Medicaid benefits.

Corresponding to N.J.S.A. 30:4D-3(i)(7), DMAHS has set up a system for "Medicaid Only."  See N.J.A.C. 10:71-1 to -9.5.  Those regulations explain that "[t]he Social Security Administration administers Title XVI, Supplemental Security Income (SSI), which provides cash payments to the aged, blind and disabled.  Individuals who desire medical care only apply through the county welfare agency for the Medicaid Only program under Title XIX."  N.J.A.C. 10:71-1.1.  Accordingly, "[a]n aged, blind or disabled person who desires Medicaid and does not wish to receive a money payment may apply for the Medicaid Only program."  N.J.A.C. 10:71-1.2(a) (emphasis added).  The regulations explicitly tether the availability of "Medicaid Only" to SSI eligibility:  "[a]ged, blind and disabled persons who are living in the community and meet the requirements of the SSI program may receive Medicaid Only."  N.J.A.C. 10:71-1.3(a).  Indeed, the regulations state, "[t]he criteria for determination of eligibility [for Medicaid Only] are based on SSI policy and procedure which do not necessarily coincide with standards for

15

other public assistance programs and therefore require separate instructions." N.J.A.C. 10:71-1.4.

Accordingly, as with SSI, the Medicaid Only regulations provide definitions and methodologies for calculating income. See N.J.A.C. 10:71-5.1 to -5.9. Within those regulations, as is also true for SSI, is a procedure for "income deeming." N.J.A.C. 10:71-5.5. That regulation provides the following regarding the deeming of income from spouse to spouse:

> If the applicant's/beneficiary's own countable income, as determined in accordance with N.J.A.C. 10:71-5.2, less appropriate exclusions in N.J.A.C. 10:71-5.3, exceeds the applicable Medicaid Only income eligibility standard in Table B at N.J.A.C. 10:71-5.6(c)5, the applicant/beneficiary is financially ineligible for Medicaid Only based on his or her own countable income, and there is no deeming. However, if the applicant's/beneficiary's own countable income renders him or her financially eligible for Medicaid Only, the following steps shall be used to compute deemed income[.]
>
> [N.J.A.C. 10:71-5.5(c).]

Table B at N.J.A.C. 10:71-5.6(c)(5) sets the income standards; for example, for an individual living alone or with an ineligible spouse, the amount is "$1,107.36" per month. Accordingly, under N.J.A.C. 10:71-5.5, if an individual who lives alone or with an ineligible spouse has an individual income above "$1,107.36," no income deeming occurs because that individual is not eligible for Medicaid Only in the first place.

16

C. The Challenged Regulation

We turn now to the chapter of the New Jersey Administrative Code containing the regulation pertaining to ABD beneficiaries that is challenged in this appeal.

Corresponding in part to, and indeed promulgated as an emergency regulation following the enactment of N.J.S.A. 30:4D-3(i)(11), see 20 N.J.R. 548(a), 1103(a), are DMAHS's regulations for the ABD program. N.J.A.C. 10:72 (titled "New Jersey Care . . . Special Medicaid Programs Manual"). This chapter of regulations contains "the criteria for Medicaid eligibility for . . . certain aged, blind and disabled persons not eligible under the provisions of N.J.A.C. 10:71 [Medicaid Only]." N.J.A.C. 10:72-1.1 (emphasis added). Like the Medicaid Only program, the ABD program sets a level of income eligibility and provides a process for income deeming. The applicants challenged a subsection within the income deeming process and how it affects eligibility. The Regulation states:

> (a) Except as specified below, countable income for aged, blind, and disabled individuals shall be determined in accordance with rules applicable to income in Medicaid Only--Aged, Blind, and Disabled (see N.J.A.C. 10:71-5).
>
> . . . .
>
> (d) In accordance with the rules at N.J.A.C. 10:71-5.5, the income of the spouse of an aged, blind, or disabled

17

individual shall be deemed to the aged, blind, or disabled individual if they are residing in the same household. Income of the parent(s) of a blind or disabled child under the age of 18 residing in the same household shall be deemed available to the child in determining income eligibility for benefits under this chapter. No income shall be deemed to an aged, blind, or disabled individual from a person who is a member of a household unit of an eligible pregnant woman or child under the provisions of this chapter or who is in the budget unit of eligible AFDC-related Medically Needy cases (including a case that is eligible pending spend-down).

1. <u>If the countable income (before income deeming) of the aged, blind, or disabled individual exceeds the poverty income guideline for one person he or she is ineligible for benefits and income deeming does not apply</u>.

2. When income of a spouse is deemed to an aged, blind, or disabled individual, the total countable income after deeming is compared to the poverty income guideline for two persons.

3. In determining income eligibility of a child, the child's income after deeming is compared to the poverty income guideline for one person.

4. When the income of a spouse must be deemed to both an aged, blind, or disabled individual and a blind or disabled child, the income is first deemed to the aged, blind, or disabled spouse. If the income (after deeming) of the aged, blind, or disabled spouse does not exceed the poverty income guideline, he or she is income eligible and there is no income to be deemed to the blind or disabled child. If the poverty income guideline is exceeded, the aged, blind, or disabled

adult is income ineligible and the excess income is deemed to the blind or disabled child.

5. When parental income must be deemed to more than one blind or disabled child, the deemable income shall be divided equally among such children.

[N.J.A.C. 10:72-4.4(a) and (d) (emphasis added).]

## II.

This appeal provides two striking personal examples of the operational impact of the Regulation under review. Both of the individuals who applied and were denied eligibility for the ABD program were disabled, were receiving Medicare, and had individual income through Social Security benefits. DMAHS determined that their income placed them just above the FPL limit for ABD benefits when unadjusted for household size. Yet their modest "excess" incomes and their financial situations made it difficult to manage Medicare co-pays, deductibles, and other medical services that are not covered by Medicare, which, each argues, was the intended purpose of this specific Medicaid extension program. Their matters unfolded as follows.

In July 2017, E.M. applied to the Essex County Board of Social Services, the county welfare agency (CWA), for medical-assistance benefits through the ABD program. At the time his application was denied, E.M. was 57 years old, and his only source of income was $1,193 per month in Social

19

Security Disability Income (SSDI).[6] E.M. lives with his wife, who is partially blind, has diabetes, and has no income. The CWA, which administers the eligibility determinations for DMAHS, denied E.M.'s application because his income of $1,193 exceeded the allowable standard of $1,005 under the FPL for individual applicants.

In November 2017, G.C. applied to the Ocean County Board of Social Services, the CWA for Ocean County, for medical assistance benefits through the ABD program. At the time of her application, G.C. was 49 years old, and her only source of income was $1,141 per month in SSDI benefits. G.C. lives with her husband, who has no income, and her two minor children. G.C.'s children each receive $279.90 in monthly Social Security benefits as dependents of a disabled parent. The CWA denied G.C.'s application because her income of $1,141 exceeded the allowable standard of $1,005 for individual applicants.

---

[6] SSDI is a benefit program under Title II of the Social Security Act, 42 U.S.C. §§ 401 to 434, distinct from SSI, which is statutorily authorized under Title XVI of the Social Security Act. The SSDI "program provides benefits to a person with a disability so severe that she is 'unable to do [her] previous work' and 'cannot . . . engage in any other kind of substantial gainful work.'" Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 797 (1999) (alteration in original) (quoting 42 U.S.C. § 423(d)(2)(A)). Its calculation is tied to work history and to the average salary from the person's work history. See 20 C.F.R. §§ 404.110 to -.120, 404.210 to -.212. Hence, the amount can and does, as here, come in somewhat above the FPL. SSI is not tied to a prior work history and earnings of a disabled person.

20

E.M. and G.C. each requested hearings.  Their matters were transferred to the Office of Administrative Law (OAL), where divergent results were reached in their matters.

Following a hearing in E.M.'s contested case proceeding, the administrative law judge (ALJ) who presided over the matter issued an Initial Decision recommending that the denial of E.M.'s application for Medicaid eligibility be reversed.  The ALJ concluded that N.J.A.C. 10:72-4.4(d)(1) -- which renders an ABD applicant ineligible if their countable income "exceeds the poverty income guideline for one person" -- conflicted with 42 U.S.C. § 1396a(m).  The ALJ noted that § 1396a(m)(2)(A) states that the level of income at which a state may set its eligibility requirements for ABD benefits "may not exceed a percentage (not more than 100 percent) of the official poverty line . . . applicable to a family of the size involved."  Accordingly, the ALJ reversed the denial of E.M.'s application because he has a family of two and N.J.A.C. 10:72-4.4(d)(1) incorrectly fails to consider the size of the applicant's family.  DMAHS issued a Final Agency Decision rejecting the ALJ's Initial Decision.

As for G.C., the ALJ who heard the matter hewed to N.J.A.C. 10:72-4.4, found that G.C.'s countable income exceeded the FPL for a household of one,

and concluded that G.C. was ineligible. DMAHS issued a Final Agency Decision adopting the Initial Decision and rejecting G.C.'s application.

Both applicants appealed, arguing that N.J.A.C. 10:72-4.4(d)(1) conflicts with 42 U.S.C. § 1396a(m) and the New Jersey Act.

In a consolidated opinion authored by the Honorable Carmen Messano, P.J.A.D., the Appellate Division reversed DMAHS's Final Agency Decisions and remanded the matters for further action. G.C. v. Div. of Med. Assistance & Health Servs., 463 N.J. Super. 79, 95 (App. Div. 2020).

After a thorough review of Medicaid and the statutory and regulatory regime adopted in New Jersey, id. at 85-89, the Appellate Division first determined that N.J.A.C. 10:72-4.4(d)(1) does not violate the federal Medicaid statute, id. at 89-92. Relying on its interpretation of the language of 42 U.S.C. § 1396a(m)(1)(A) to (B) and (m)(2)(A), the court noted that subsection (m)(2)(A) "only prohibits [DMAHS] from establishing an income level for eligibility purposes at an amount that 'exceed[s] a percentage (not more than 100 percent) of the official poverty line . . . applicable to a family of the size involved.'" Id. at 89-90 (second alteration and omission in original) (quoting 42 U.S.C. § 1396a(m)(2)(A)). The Appellate Division concluded that DMAHS's promulgation of N.J.A.C. 10:72-4.4(d)(1) "does not set an income level for eligibility that exceeds the FPL for a family of four or two people;

22

rather, the Regulation sets an income level for eligibility that is less than the FPL for a family of four or two." Id. at 90. The court therefore determined there was no conflict between the Regulation and the federal provision. Ibid. The court found the out-of-state cases cited by E.M. and G.C. unpersuasive. Id. at 90-92.

However, the Appellate Division found a fatal problem with the Regulation under state law. Turning to E.M. and G.C.'s argument that N.J.A.C. 10:72-4.4(d)(1) conflicts with its enabling statute, the court pointed to N.J.S.A. 30:4D-3(i)(11), which defines a "qualified applicant" for ABD benefits, and quoted its part that includes "an individual . . . who is . . . disabled . . . whose income does not exceed 100% of the poverty level, adjusted for family size, and whose resources do not exceed 100% of the resource standard used to determine medically needy eligibility." Id. at 92-93 (omissions in original) (quoting N.J.S.A. 30:4D-3(i)(11)). In addition to the clear language found in the statutory definition of "qualified applicant" that pertains to the ABD program, the court also found support in a Senate Committee statement accompanying the 1988 amendment to N.J.S.A. 30:4D-3, which expanded coverage to ABD individuals. Id. at 93. Per that statement, the amendment was intended to "expand[] the eligibility criteria . . . to include persons who are . . . disabled . . . and whose incomes are less than the

23

appropriate poverty level of their family size and whose assets do not exceed the level permitted under the State's medically needy program." Ibid. (alterations in original) (emphasis added) (quoting S. Rev., Fin., & Appropriations Comm. Statement to L. 1987, c. 349 (June 15, 1987)). Based on those indicators of legislative intent concerning the operation of the extended ABD program, the Appellate Division then held that "N.J.A.C. 10:72-4.4(d)(1)[] conflicts with the Act and must be stricken." Id. at 94-95.

## III.

We address first the state law arguments raised by the State's petition.

## A.

In seeking reversal of the Appellate Division judgment, DMAHS argues that the Appellate Division performed a myopic "plain reading" analysis and did not consider the Regulation in the broader context of the New Jersey Act and Medicaid's federal regulatory scheme. DMAHS essentially posits that certain words within the Medicaid regulatory scheme do not always follow their "ordinary meaning."

According to DMAHS, the seeming conflict between the Regulation and the enabling statute is not actually a conflict at all -- the Regulation merely applies the same income calculation methodology as the Medicaid Only

24

program and, the argument goes, there was no indication from the Legislature, when it enacted N.J.S.A. 30:4D-3(i)(11), for DMAHS to do otherwise.

DMAHS's argument begins with 42 U.S.C. § 1396a(m)(1)(B), which states that an individual's income must be determined under 42 U.S.C. § 1382a for purposes of the supplemental security income program. DMAHS then relies on the income deeming procedures in federal regulations for SSI, citing 20 C.F.R. § 416.1160(a), which defines "deeming" as "the process of considering another person's income to be your own." The regulations on which DMAHS relies instruct that if an applicant lives with a spouse who is ineligible for SSI benefits, the Social Security Administration "look[s] at your spouse's income to decide whether we must deem some of it to you. We do this because we expect your spouse to use some of his or her income to take care of some of your needs." Id. at (a)(1). The regulations further explain that the Administration "consider[s] the income of your ineligible spouse . . . in the current month to determine whether you are eligible for SSI benefits for that month." Id. at (b)(1). The regulations provide the steps for deeming the income of an ineligible spouse. 20 C.F.R. § 416.1163 (a) to (c). The regulations then provide:

> (d) Determining your eligibility for SSI.
>
>> (1) If the amount of your ineligible spouse's income that remains after appropriate allocations

25

is not more than the difference between the Federal benefit rate for an eligible couple and the Federal benefit rate[7] for an eligible individual, there is no income to deem to you from your spouse. In this situation, we subtract only your own countable income from the Federal benefit rate for an individual to determine whether you are eligible for SSI benefits.

(2) If the amount of your ineligible spouse's income that remains after appropriate allocations is more than the difference between the Federal benefit rate for an eligible couple and the Federal benefit rate for an eligible individual, we treat you and your ineligible spouse as an eligible couple.

[Id. at (d) (then listing further steps to the analysis).]

Specifically, in advancing this argument, DMAHS takes its cue from 416.1163(d)(1)'s statement that where an ineligible spouse's countable income "is not more than the difference between the Federal benefit rate for an eligible couple and the Federal benefit rate for an eligible individual, there is no income to deem to you from your spouse," because, in that situation, the

---

[7] As defined,

Federal benefit rate means the monthly payment rate for an eligible individual or couple. It is the figure from which we subtract countable income to find out how much your Federal SSI benefit should be. The Federal benefit rate does not include the rate for any State supplement paid by us on behalf of a State.

[20 C.F.R. § 416.1101.]

26

regulation states "we subtract only your own countable income from the Federal benefit rate for an individual to determine whether you are eligible for SSI benefits." Ibid. DMAHS asserts that regulatory language supports the operational structure followed in N.J.A.C. 10:72-4.4(d), because, it argues, when an applicant lives with an ineligible spouse, the SSI methodology for calculating an applicant's countable income, which includes income deeming, entails a threshold determination whether the applicant should be evaluated as an individual or an eligible couple.

DMAHS asserts that its Medicaid Only program tracks the above federal income deeming regulations; it reasons that, because the ABD program cross-references Medicaid Only, the ABD program also follows that already existing framework. Thus, when DMAHS adopted N.J.A.C. 10:72-4.4(d), which cross-references N.J.A.C. 10:71-5.5, it contends that it was merely aligning the income deeming methodology for ABD beneficiaries with the existing methodology for the Medicaid Only program and the SSI income-deeming methodology. See N.J.A.C. 10:71-5.5(c). DMAHS argues that the Medicaid Only program requires an applicant to first be individually eligible before adjustment is made for family size and that therefore, in the ABD program, the Regulation follows the same income deeming methodology: An initial determination is made under N.J.A.C. 10:72-4.4(d)(1) as to whether the

27

applicant's income exceeds the FPL for a single person, and then -- after income-deeming -- the applicant's deemed income is compared to "the income level established by the State" as required by § 1396a(m)(1)(B) and (m)(1)(A). It is at that point that DMAHS accounts for family size, a procedure it argues is in accord with the New Jersey Act.

B.

In response to the State's petition, E.M. and G.C. argue that N.J.A.C. 10:72-4.4(d) explicitly requires an individual's countable income to be measured against the "poverty income guideline for one person," and if the individual's income exceeds that poverty level, the individual is ineligible for benefits. That clear language, they contend, renders the Regulation, on its face, in conflict with N.J.S.A. 30:4D-3(i)(11), which explicitly makes medical assistance available to those who are disabled or over the age of 65, "whose income does not exceed 100% of the poverty level, <u>adjusted for family size</u>." They urge that the Appellate Division's compelling reasoning on this issue be affirmed.

Amici support the position advanced by G.C. and E.M. and similarly urge affirmance of the Appellate Division's judgment holding the Regulation in conflict with state enabling law.

IV.

A.

In this review, we note that an appellate court is not "bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973). That principle holds because an agency cannot ignore or change legislative terms "or frustrate the policy embodied in the statute." T.H. v. Div. of Developmental Disabilities, 189 N.J. 478, 491 (2007) (quoting N.J. Chamber of Com. v. Election Law Enf't Comm'n, 82 N.J. 52, 82 (1980)). That said, when reviewing an administrative agency's interpretation of one of its regulations implementing a state statute, we ordinarily defer to an agency's reasonable interpretation. An agency's reasonable interpretation receives favorable treatment by a reviewing court, but "not blind deference." In re N.J. Individual Health Coverage Program's Readoption of N.J.A.C. 11:20-1, 179 N.J. 570, 584 (2004). Here, we have difficulty deferring to the agency because the interpretation adopted and implemented through the Regulation is at odds with the plain language adopted by the Legislature in enacting this Medicaid expansion for New Jersey.

As G.C. and E.M. argue, and as the Appellate Division held, the Regulation explicitly requires an individual's countable income to be compared against the "poverty income guideline for one person." The Regulation then requires that if the individual's income exceeds that poverty level, the individual is ineligible for benefits, and thus ends the need for any further analysis. One of the first rules of statutory construction is to follow the plain language of the Legislature and give those words their ordinary meaning. DiProspero v. Penn, 183 N.J. 477, 492-93 (2005). Comparing a plain language construction of the statute to the Regulation, we find the Regulation, on its face, to be in patent conflict with N.J.S.A. 30:4D-3(i)(11), which explicitly makes medical assistance available to those who are disabled or over the age of 65, "whose income does not exceed 100% of the poverty level, adjusted for family size." The Regulation alters the language of the legislation and frustrates the plain import of the legislative direction to adjust the poverty level to family size when determining eligibility.

The fact that the Regulation operates in the regulatory context of "income deeming," which DMAHS forcefully argues is the pre-condition that must be vaulted before family size is considered, is of no avail. That interpretation cannot be squared with the language chosen by the Legislature.

30

In a situation like E.M.'s, for example, where the ineligible spouse has no income, so no income is deemed, the mere fact that N.J.A.C. 10:72-4.4(d) makes an initial eligibility determination within the deeming methodology is functionally no different than if, after income calculation, the applicant's own personal or individual income is compared against the FPL for a single person. Under either circumstance, an applicant who may otherwise be eligible based on income and family size to receive Medicaid would be rendered ineligible. Yet, according to DMAHS, because that eligibility determination takes place within the income-deeming methodology, it is justified. Apparently, DMAHS believes that by placing an initial -- and plainly unsupported -- eligibility requirement under the label of "income-deeming methodology," that requirement can conflict with the enabling statute's clear mandates governing ABD eligibility.

We cannot agree. The placement of this eligibility determination within the income-deeming methodology that disqualified both E.M. and G.C. does not make it any more acceptable. Each part of the regulatory scheme must flow from the statute that enables it; DMAHS cannot selectively follow the enabling statute. Moreover, the challenged portion of N.J.A.C. 10:72-4.4 is triggered regardless of whether income is deemed, which suggests that the

31

initial eligibility determination is not even rationally related to, let alone a necessary component of, the income-deeming methodology.

Our review of the legislative history only further supports that the Legislature meant what it said when creating this new program, namely that the federal poverty line was to be adjusted for family size when determining an applicant's eligibility. As explained in a Senate Committee statement to the bill as it wound its way to passage, the bill expanded the criteria for Medicaid eligibility "to include persons who are 65 years of age and older, disabled or blind and whose incomes are less than the appropriate poverty level for their family size and whose assets do not exceed the level permitted under the State's medically needy program." S. Rev., Fin., & Appropriations Comm. Statement to S. 2972 (June 15, 1987) (emphasis added). That Committee Statement explained that "[t]he provisions of the bill that establish a higher income eligibility standard for applicants than is currently the standard for the State's medically needy program . . . will permit some of the medically needy recipients to now receive Medicaid while others will be new recipients altogether due to the new standard." Ibid. Then-Governor Thomas H. Kean signed the legislation into law, a step described as "in keeping with the spirit of compassion and caring which has come to typify New Jersey and our

32

people." Office of the Governor, <u>Press Release: Statement upon Signing S-2972</u> (Jan. 4, 1988).

In sum, the Regulation contravenes the plain language and legislative intent of the New Jersey Act, which requires that the income of prospective ABD beneficiaries be compared against the FPL as adjusted for family size. The Regulation may not, consistent with the state statutory language, find an applicant ineligible without making the proper adjustment for family size.

## C.

DMAHS adds another layer to its argument that seeks to have us look beyond the plain language of the New Jersey Act and conclude that the broader federal Medicaid scheme justifies the Regulation. To the extent that DMAHS argues that the Appellate Division's plain language reading distorts the intent of the Medicaid scheme as a whole and that the Regulation's approach is still reasonable when viewed in this larger context, its argument proves unavailing.[8]

To support this argument, DMAHS relies predominantly on the fact that eligible candidates under 42 U.S.C. § 1396a(m)(1)(A) must have their income determined under SSI income methodology. That is true and, in fact, not

---

[8] To a certain extent, this argument intersects with DMAHS's defense of G.C. and E.M.'s claims that the Regulation is inconsistent with the letter and intent of the federal enabling law for this expanded Medicaid program. We try here to keep distinct the two arguments so that both receive attention.

disputed by the applicants here. But -- and it is a significant but -- DMAHS conflates two different concepts: determining income and determining eligibility. The Medicaid Act does not support such a conflation.

Although subsection (m)(1)(B) requires income to be determined based on SSI methodology, see 42 U.S.C. § 1396a(m)(1)(B), the statutory provision also makes clear that Medicaid eligibility is determined by comparing the calculated income to a state's chosen percentage of the FPL adjusted for family size. In other words, while subsection (m)(1)(B) borrows the SSI income calculation methodology, it provides its own distinct test for determining eligibility.

Indeed, subsection (m)(1)(B) references specifically, and only, 42 U.S.C. § 1382a, which is the SSI statute pertaining to income calculation. That provision is titled, "Income; earned and unearned income defined" and defines what is and is not "income." However, immediately before that provision is a separate section, 42 U.S.C. § 1382, which is entitled "Eligibility for benefits." That provision relies on income calculations under section 1382a, and then describes eligibility criteria. In other words, it is a separate provision, which plainly goes unreferenced by subsection (m)(1)(B), that defines an eligible individual for SSI purposes. We find subsection (m)(1)(B)'s cross-reference to section 1382a, without an accompanying reference to section 1382,

significant. That legislative choice bolsters what E.M. and G.C. maintain: although this Medicaid program calculates income in the same manner as SSI, its eligibility criteria are different and divorced from those of SSI.

Our review of the federal legislative scheme, as earlier detailed, leads to the same inexorable conclusion that Congress explicitly intended eligibility determinations for applicants under (m)(1)(A) to be distinct from SSI eligibility. That is evident from the fact that 42 U.S.C. § 1396a(a)(10)(A)(i)(I) and (ii)(I) tie Medicaid eligibility to SSI eligibility, whereas, as discussed above, the language used in subsection (a)(10)(A)(ii)(X) and subsection (m)(1)(B) not only prescribes a unique eligibility formula, but also goes out of its way to avoid reference to SSI's eligibility criteria.

That severance between Medicaid eligibility and SSI eligibility is a flaw in the logic of DMAHS's argument. Requiring income to be calculated under SSI methodology does not implicitly carry with it a requirement that an individual also vault SSI eligibility standards. Thus, DMAHS's argument that the Regulation must follow any initial eligibility determination that may be present in either the SSI income-deeming methodology or Medicaid Only program simply does not follow.

It also bears noting that N.J.A.C. 10:72-4.4 does not actually track the SSI methodology that DMAHS claims compels its initial eligibility

35

determination.  Under the cited SSI regulation, an individual is treated as an individual only if he or she has <u>no</u> "deemed" income at all.  <u>See</u> 20 C.F.R. § 416.1163(d).  It is only when the ineligible spouse's income is <u>not deemed</u> that the applicant's countable income is subtracted from the <u>Federal Benefit Rate</u> for an individual, which, it bears emphasis, is distinct from the FPL.  <u>See</u> <u>supra</u> note 8.  Yet, under N.J.A.C. 10:72-4.4, an individual must vault the initial eligibility determination against the FPL regardless of whether income is deemed or not.

On a question of interpretation of a federal statute, we are not bound by, nor need we defer to, a state agency's interpretation of federal law.  <u>See, e.g.</u>, <u>K.K. v. Div. of Med. Assistance & Health Servs.</u>, 453 N.J. Super. 157, 161 (App. Div. 2018) (citing <u>In re RCN of N.Y.</u>, 186 N.J. 83, 92 (2006)).[9]  Thus, in

---

[9]  Chief Justice Zazzali explained the Court's reasoning for this approach in <u>RCN of N.Y.</u>, stating, in that cable communications setting, that

> we will not afford to the BPU the deference that <u>Chevron</u> provides to federal agencies interpreting federal law.  "A state agency's interpretation of federal statutes is not entitled to the deference afforded a federal agency's interpretation of its own statutes under [<u>Chevron</u>]."  <u>Orthopaedic Hosp. v. Belshe</u>, 103 F.3d 1491, 1495 (9th Cir. 1997) (reviewing state agency's interpretation of federal Medicaid Act de novo) (citation omitted) . . . .  [A]lthough this Court has applied a <u>Chevron</u>-like deference to our state agencies' interpretations of state law, <u>see</u> <u>Matturri v. Bd. of Trs. of the Judicial Ret. Sys.</u>, 173 N.J. 368, 381-82, (2002),

this challenge to the Regulation, we review de novo DMAHS's interpretation of the federal program. For the reasons stated, and applying a de novo standard of review, we reject the agency's asserted interpretation of the claimed requirement under federal law. We conclude that, contrary to DMAHS's interpretation, the Regulation is not compelled by federal law to operate in a manner that is at odds with the New Jersey Act.

Finally, we add that, on a practical level, the Regulation, as G.C. and E.M. argue, can lead to an absurd outcome. As pointed out in a hypothetical, an individual with $900 in countable individual income (below the $1,005 FPL amount for a single individual) whose spouse has $293 in countable income would have the same total income as E.M. and his wife (who has no income) -- $1,193 -- but would be eligible for Medicaid under the Regulation because that individual's income would be able to vault the first step of N.J.A.C. 10:72-4.4(d).

we find that applying any form of deference, whether under Chevron or our own jurisprudence, is inappropriate in these circumstances.

[186 N.J. at 92, 93 (discussing Chevron, U.S.A., Inc. v. NRDC, Inc., 467 U.S. 837 (1984)).]

In conclusion, we affirm the Appellate Division's invalidation of the Regulation as inconsistent with its state enabling legislation and contrary to legislative intent.

V.

Cross-petitioners G.C. and E.M. urge rejection of the Appellate Division's conclusion that the Regulation's operation is not inconsistent with federal law. Again, here the cross-petitioners and DMAHS press their conflicting views of the federal statutory and regulatory requirements.

The two key provisions bear repeating. Pursuant to the enabling federal provision for this ABD program,

> (A) The income level established under paragraph (1)(B) may not exceed a percentage (not more than 100 percent) of the official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with [42 U.S.C. § 9902(2)]) applicable to a family of the size involved.
>
> [42 U.S.C. § 1396a(m)(2)(A) (emphasis added).]

And, under the Regulation,

> 1. If the countable income (before income deeming) of the aged, blind, or disabled individual exceeds the poverty income guideline for one person he or she is ineligible for benefits and income deeming does not apply.
>
> [N.J.A.C. 10:72-4.4(d)(1).]

38

The Appellate Division rejected the applicants' argument that the Regulation was inconsistent with federal law by focusing on the result achieved by the Regulation's application. Because the federal provision, subsection (m)(2)(A), only sets an upper limit and N.J.A.C. 10:72-4.4 necessarily establishes an income level that is below that limit, the Appellate Division viewed the Regulation as functionally meeting the requirement of (m)(2)(A). Simply put, it viewed the income level set by N.J.A.C. 10:72-4.4 as compliant with the federal law's mandates because the FPL for a single person will necessarily be lower than the FPL adjusted for the size of the applicant's family.

The problem with the Appellate Division's analysis is that it elevates the ultimate result over the method of operation explicitly dictated by Congress. We believe Congress's choice of language, "applicable to a family of the size involved," carries with it a procedural requirement that the Regulation plainly evades and thus renders a nullity. The well-known canon of construction that instructs courts to give effect to all words in a statute applies with equal force for federal as well as state law enactments. See, e.g., Advoc. Health Care Network v. Stapleton, 581 U.S. ___, 137 S. Ct. 1652, 1659 (2017) (noting that the Court's "practice . . . is to 'give effect, if possible, to every clause and word of a statute'" (quoting Williams v. Taylor, 529 U.S. 362, 404 (2000)));

39

Delanoy v. Township of Ocean, 245 N.J. 384, 401 (2021) ("Traditional principles of statutory construction require courts to give meaning to all words used in a statute, for example, to avoid treating the Legislature's language as mere surplusage."); see also Norman J. Singer & J.D. Shambie Singer, 2A Sutherland on Statutory Construction §46:6 (7th ed. 2007) ("Courts construe a statute to give effect to all its provisions.").

The federal Medicaid Act is clear for this specific program:  states may choose a percentage, "not more than 100 percent," of the FPL "applicable to a family of the size involved," by which to compare an applicant's income to determine Medicaid eligibility.  The Regulation does not do that.  Rather, it indiscriminately compares any applicant's income, regardless of his or her family size, against the FPL for one person.  Although that benchmark may necessarily amount to a percentage less than 100% of the appropriate FPL, that result is reached under a procedure that ignores Congress's chosen approach. We believe Congress would not have chosen the respective language requiring adjustment for family size if it did not care that states did exactly the opposite.

We have grave concerns that the Regulation's method of operation is inconsistent with the Medicaid Act, as cross-petitioners maintain.[10]  Because

---

[10]  In expressing this view, we note our agreement with the Appellate Division that the out-of-state cases cited by cross-petitioners are not helpful.  See G.C., 463 N.J. Super. at 90-92 (discussing out-of-state cases).  We add the

40

we have invalidated the Regulation on state law grounds, we need not reach this question of federal law; however, we vacate the contrary conclusion that the Appellate Division included as part of its holding.

VI.

The judgment of the Appellate Division is affirmed as modified.

CHIEF JUSTICE RABNER and JUSTICES ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE LaVECCHIA's opinion.

---

following. Three of those decisions address state programs run under a differently structured federal provision that sets a statutory floor -- rather than a ceiling -- of 100% of the FPL as the benchmark in which an applicant's income must be compared. See 42 U.S.C. § 1396d(p)(1)(B), (2)(A). Those cases are unhelpful because, by reason of that statutory floor alone, the Regulation would fail under Section 1396d(p)(1)(B). Section 1396a, however, does not set a statutory floor, only a ceiling. Thus, despite some similar language, an interpretation of Section 1396d(p) cannot logically be engrafted onto Section 1396a(m), at least for our purposes in addressing the validity of the Regulation.

Additionally, we find the fourth case cited by E.M. and G.C., which did implicate Section 1396a(m), unpersuasive for the same reason expressed by the Appellate Division: there is no substantive ruling or interpretation examining the specific language of Section 1396a(m). See G.C., 463 N.J. Super. at 91-92.

41